# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| KEELY DUNHAM, by and through her | ) |  |
| Next Friend TAMMY TURNER, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
| vs. | ) | Case No. 08-5054-CV-SW-GAF |
|  | ) |  |
| MIDWEST TRUCKING AND | ) |  |
| TRANSPORT, INC. and | ) |  |
| KAZIMIERZ WOJCIK, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

Presently before the Court is Defendants Midwest Trucking and Transport, Inc. ("Midwest")

and Kazimierz Wojcik's ("Mr. Wojcik") (jointly "Defendants") Motion for Summary Judgment. (Doc.

#60).  Defendants' central argument is that Plaintiff Keely Dunham, by and through her Next Friend

Tammy Turner ("Plaintiff"), has failed to establish a material issue of fact regarding her claim that

Defendants were negligent for failing to have a proper safety bumper on the semi-trailer involved in

the collision at issue and for failing to use proper warning signals prior to the collision. (Doc. #61).

Plaintiff opposes the Motion. (Doc. #62).  For the reasons set forth below, Defendants' Motion for

Summary Judgment is **DENIED**.

## DISCUSSION

### I.    FACTS

On August 6, 2005, Plaintiff's mother, Tonia L. Dunham-Roa ("Decedent"), and her father,

Jeffrey C. Roa ("Mr. Roa"), were involved in an automobile collision.  (Plaintiff's First Amended

1

Petition for Damages ("Petition"), ¶ 8). Mr. Roa was driving a Honda Odyssey van, and Decedent was

riding in the vehicle's front passenger seat. *Id.* As the couple headed eastbound on Interstate 44 in

Jasper County, Missouri, their vehicle struck the rear portion of a Volvo conventional tractor trailer

owned by Midwest and operated by Mr. Wojcik. *Id.*

Several miles ahead of where the collision at issue occurred, another collision had occurred,

causing traffic to back up and slow down to an estimated speed near five (5) miles per hour. (Wojcik

Dep., pg. 34:1-35:24). Mr. Wojcik claims that at the time of the collision he was traveling at

approximately five (5) miles per hour. (Wojcik Dep., 39:12-18). Mr. Roa cannot recall his vehicle's

exact speed just prior to the collision, but he believes that he had the cruise control set to the speed limit

on Interstate 44, which was seventy (70) miles per hour. (Roa Dep., 69:18-22; Accident Reconstruction

Report, p. 5). Mr. Roa, it appears, maintained this speed until just before the collision, at which time

he applied his brakes and swerved to the left in an attempt to avoid striking Defendants' trailer.

(Caldwell Dep., 10:9-22, 17:8-12).

Mr. Wojcik maintains that he had his trailer's emergency flashers on prior to and at the time

of the collision so that its lights flashed as a warning of his slow speed to approaching vehicles. (Wojcik

Dep., 63:24-25).[1] However, Julie Litherland, a witness to the collision, stated in her deposition that she

_____

[1]In her response to Defendants' Motion, Plaintiff attached a copy of portions of the Missouri
CDL Drivers Manual, published by the Missouri Department of Revenue, which, in part, states the
following:

> Drivers often do not realize how fast they are catching up to a slow vehicle until
> they are very close. If you must drive slowly, alert following drivers by turning on
> your emergency flashers if it is legal.

(Missouri CDL Drivers Manual).

did not believe the trailer's emergency flashers were activated at the time of the collision. (Litherland Dep., 29:15-23). Another witness, John E. Caldwell, stated he did not recall the trailer's emergency flashers being on prior to the collision, but did remember seeing them on after the collision. (Caldwell Dep., 36:10-16).

The passenger side of Mr. Roa's van struck the rear driver's side portion of Mr. Wojcik's trailer. *Id.* at p. 11, ll. 3-19). More specifically, the van struck the left rear portion of the trailer's lower bumper. *Id.* The collision caused the trailer's lower "safety" bumper to bend forward from the trailer's left vertical support bar. (Accident Reconstruction Report, p. 8). Sergeant A. O. Brown ("Officer Brown"), a Missouri State Highway Patrol officer, inspected the vehicle after the collision and believed that the trailer's safety bumper "had been re-welded more than once." *Id.* Officer Brown further stated, "Some of those welds were freshly broken. The welds were rusty, but the fresh break was shiny." (Accident Reconstruction Report, p. 8).

Mr. Roa's van suffered significant damage in the collision. (Caldwell Dep., 11:13-19). Portions of the hood and the roof were removed on the van's passenger side. *Id.* Mr. Roa sustained non-disabling injuries. (Accident Reconstruction Report, p. 4). Decedent, however, suffered fatal injuries from the collision. *Id.*

Plaintiff filed a negligence action against Defendants in the Circuit Court of Jasper County, Missouri, for the wrongful death of her mother. (Petition). Thereafter, Defendants removed the case to this Court. (Doc. #1). Plaintiff alleges Defendants were negligent in the following respects:

a. in negligently stopping in the traveled portion of the roadway without proper warning or other precautions;
b. in negligently failing to engage its warning lights or flashers and in failing to instigate any other warning to traffic following from behind;
c. in negligently stopping and failing to use the proper lane;

3

d.    in negligently failing to have proper safety and warning devices and lights to warn other following Defendant's [sic] vehicle; [and]

e.    in failing to have a proper safety bumper which permitted Decedent's husband's vehicle to go under Defendant's [sic] trailer.

(Petition).  Plaintiff has identified two expert witnesses, Dr. Bruno Schmidt ("Dr. Schmidt") and William Taylor ("Mr. Taylor"), to offer testimony regarding the trailer's safety bumper.  (Doc. ##61, p. 9, 62, p. 9).

Dr. Schmidt is an accident reconstructionist. (Doc. #62, p. 18).  Dr. Schmidt testified in his deposition that had the trailer's safety bumper not been altered, it would have been stronger and better able to alter the dynamic behavior of Mr. Roa's van, causing less damage to the van and less injury to Decedent. (Dr. Schmidt Dep., 49:4-17, 59:1-11; *see also* Doc. #61-10). His opinion is based on Dr. Schmidt's "analysis of the amount of rotation of [Mr. Roa's van] based upon testing made of the strength of a [standard Great Dane safety] guard." (Dr. Schmidt Dep., 59:4-23).  Dr. Schmidt, in his affidavit, states this opinion "is an opinion reached by me to a reasonable degree of certainty in my professional field as a recognized and certified accident reconstructionist." (Schmidt Aff.).

Mr. Taylor  has worked for Prime, Inc., a trucking company operating from Springfield, Missouri, for fifteen (15) years and is currently its Director of Maintenance. (Mr. Taylor Dep., 14:10-23).  In this role, he is responsible for, among other things, overseeing the maintenance and repair of Prime, Inc.'s tractors and trailers.  (Mr. Taylor Dep., 15:2-16).  Mr. Taylor offered testimony about industry practice and safety standards relating to safety bumpers in his deposition. *Id.*, 74:22-75:3; *see also* Doc. #61-16.  Specifically, he testified that it is against industry custom and safety practice to repair a safety bumper by welding it. *Id.*  Both Dr. Schmidt and Mr. Taylor relied on Officer Brown's

4

observations of the alleged welds made to the trailer's safety bumper. (Dr. Schmidt Dep., 55:12-16; Mr. Taylor Dep., 63:1-18).

Defendants urge the Court to disqualify Dr. Schmidt and Mr. Taylor from testifying as expert witnesses. (Doc. #61). Defendants argue that both witnesses should not be allowed to base their opinions, in part, on Officer Brown's observations of the welds in Defendants' trailer safety bumper. *Id.*, p. 21-22. Defendants believe Officer Brown's statements regarding the welds in the safety bumper, in effect, constitute "unsupported" and "speculative conclusion[s]" that a lay witness may not make. *Id.* Defendants also argue Dr. Schmidt should be disqualified because his opinion of whether an unaltered safety bumper would have resulted in less damage to the van and Decedent was not made with sufficient professional certainty.[2] (Doc. #61, p. 21).

## II.     STANDARD

Fed. R. Civ. P. 56 addresses motions for summary judgment. Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990).

---

[2]Dr. Schmidt stated, "If the underride guard[,] [a.k.a., the safety bumper,] of the Wojcik trailer had not failed, it is **possible** that it would have sufficiently altered the motion of the Roa vehicle so as to prevent passenger compartment intrusion." (Doc. 62-10, p. 4) (emphasis added).

5

**III.     ANALYSIS**

**A.     The Safety Bumper**

      **i.     The Admissibility of Officer Brown's Statements Regarding Welds.**

Defendants argue that neither of Plaintiff's two proffered experts should be allowed to base their opinions on Officer Brown's statements about possible welds in Defendants' trailer safety bumper. Defendants appear to argue that Officer Brown is unqualified to offer an opinion as to whether metal has been welded together or whether a piece of metal has fractured at the site of a prior weld.

Under certain circumstances, lay witnesses are permitted to offer opinion testimony. Specifically, Fed. R. Evid. 701 allows a lay witness to offer opinion testimony if the opinions or inference are (a) rationally based on his perceptions, (b) helpful to the jury, and (c) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

There is no dispute Officer Brown conducted an investigation of the collision and had an opportunity to inspect the safety bumper at issue. According to his Accident Reconstruction Report, he believed the safety bumper had been welded multiple times and had broken along one of the welds. Hence, his statements are based on his perception and first hand knowledge. Further, these observations or opinions will be helpful to the jury's understanding of the safety bumper's condition prior to, at the time of, and after the collision.

The real question is whether it takes scientific, technical, or specialized knowledge to be able to determine  a piece of metal contains a weld. This Court finds that it does not. While most lay witnesses might not be qualified to offer testimony regarding proper welding techniques or processes, most witnesses likely would have little problem recognizing the distinct characteristics of a weld made

6

in metal. Thus, Officer Brown's conclusion or opinion that the safety bumper had been welded was not one based on the sort of scientific, technical, or special knowledge that requires expert testimony.

Having determined that Officer Brown is qualified as a lay witness to offer his opinion of whether the safety bumper had been welded, it stands to reason that he would also be able to observe whether the safety bumper broke at the site of a weld. Therefore, Officer Brown's testimony as to welds in the safety bumper is admissible lay witness testimony that Plaintiff's experts were allowed to use to form a basis for their expert opinions. *See Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) (stating experts are allowed to offer opinions not based on firsthand knowledge and the factual basis of such opinion relates to the credibility of the testimony, not its admissibility).

### ii.     The Testimony of Mr. Taylor.

Defendants argue the Court, when ruling on their Motion, should not consider Mr. Taylor's opinions of whether it is against industry practice or custom to weld or otherwise modify a trailer's safety bumper because his opinions rest partially on Officer Brown's observations of welds in Defendants' safety bumper. As stated above, Mr. Taylor, as an expert witness, was allowed to rely on Officer Brown's observations or opinions of the safety bumper. *See id.* Mr. Taylor testified as to industry standards and practices in the trucking industry, which requires the type of specialized knowledge Rule 702 requires be given by an expert witness, and there is no indication that his opinions are untrustworthy. Therefore, for the purposes of this Motion, the Court deems Mr. Taylor's testimony admissible.

### iii.     The Testimony of Dr. Schmidt.

Defendants argue the Court should not consider Dr. Schmidt's opinions of the appropriateness of Defendants' trailer safety bumper because (1) his opinions rest partially on Officer Brown's

7

observations of welds in the safety bumper contained in the Accident Reconstruction Report and (2) he used the word "possible" when opining whether damage to the passenger compartment of Mr. Roa's van, and, impliedly, injury to Decedent, would have been lessened had the trailer's safety bumper not allegedly failed. First, Dr. Schmidt was permitted to rely on Officer Brown's statements regarding his observation of welds in the safety bumper. *See id.* Second, Dr. Schmidt's use of the word "possible" when opining whether damage to the passenger compartment would have been lessened had the trailer's safety bumper been in an unaltered state does not necessitate excluding his testimony or a conclusion that Plaintiff has failed to create an issue of fact regarding legal cause. Plaintiff must, of course, demonstrate Defendants' actions or inactions were, at a minimum, a "but-for" cause that led to Decedent's injury. *See Morton v. Mutchnick*, 904 S.W.2d 14, 16 (Mo. Ct. App. 1995). However, Plaintiff, as the non-moving party to this Motion for Summary Judgment, is entitled to have all facts construed in light most favorable to her position, and Plaintiff must be given "the benefit of all reasonable inferences to be drawn from the facts." *See Woodsmith*, 904 F. 2d at 1247.

Dr. Schmidt's testimony, standing alone, is likely insufficient to create an issue of fact as to whether Defendants' actions were a legal cause of Decedent's injury. The Court, however, must look at the totality of the evidence in this case. Thus, Dr. Schmidt's testimony must be viewed as only one piece of the evidence presented. Plaintiff has offered testimony that, if taken as true, establishes, in part, (1) Defendants' trailer's safety bumper had been welded multiple times and had broken at the site of one of those welds; (2) it is against industry custom to repair a trailer's safety bumper by welding it; and (3) that a non-altered safety bumper could have reduced damage to Mr. Roa's vehicle and injury to Decedent. From this evidence, a reasonable jury could infer that Defendants' actions were a "but-for" cause of some or all of Decedent's injury. *See Jones v. Trittler*, 983 S.W.2d 165, 167-68 (Mo. Ct.

8

App. 1998) (holding expert testimony of causation is unnecessary if evidence is sufficient for a jury to reasonably infer an alleged tortfeasor was a "but for" cause of damage). Viewing the facts in the light most favorable to Plaintiff and giving her the benefit of all inferences reasonably drawn from those facts, Dr. Schmidt's testimony is sufficient to defeat summary judgment on the safety bumper issue.[3]

**B.     Emergency Flashers.**

Defendants argue they are entitled to summary judgment on the issue of whether they were negligent for Mr. Wojcik's alleged failure to use his emergency flashers prior to the collision because Plaintiff has failed to establish a duty on Mr. Wojcik's part to do so. In response to Defendants' Motion, Plaintiff attached portions of the Missouri CDL Drivers Manual as evidence of Mr. Wojcik's duty to use his emergency flashers while driving slowing on the interstate. In part, the Missouri CDL Drivers Manual tells commercial drivers, "If you must drive slowly, alert following drivers by turning on your emergency flashers if it is legal." Defendants assert this information is inadmissible hearsay evidence that cannot be weighed by the Court when ruling on this Motion. This evidence, however, is not hearsay because it is not being entered for the truth of the matters asserted therein. Rather, this evidence is being used to demonstrate Defendants had notice or knowledge that operating a truck and trailer at a slow speed without using emergency flashers could pose danger for approaching traffic. *See* Fed. R. Evid. 801(c); *see also* 29 Am. Jur. 2d *Evidence* § 676 (2009) (stating the presentation of evidence bearing on the state of mind of a defendant is a non-hearsay use).[4] Thus, the Court may consider this evidence.

---

[3]Dr. Schmidt must still be shown to be qualified to render any opinions offered.

[4]This determination is presently made for purposes of this Motion only. Defendants are free to renew their objection to this evidence at trial.

9

In a negligence case, a plaintiff must establish the defendant had some duty to protect her from some foreseeable and unreasonable risk of harm. *Berga v. Archway Kitchen and Bath, Inc.*, 926 S.W.2d 476, 478 (Mo. 1996). Whether a duty was owed to a particular defendant "is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it." *Berga*, 926 S.W.2d at 479. Under Missouri law, a motorist is under a "basic duty" to "exercise the highest degree of care and drive . . . so as not to endanger the property or the life or limb of another person." *Gerdel v. Broccard*, 428 S.W.2d 492, 496 (Mo. 1968) (citations and quotations omitted). The actual degree of care a driver must observe is dependant upon the specific circumstances surrounding the incident at issue. *See id.*

In this case, Mr. Wojcik owed Plaintiff a basic duty to exercise the highest degree of care while driving considering the circumstance at the time of the collision. *See id.* Whether Mr. Wojcik owed Plaintiff a more specific duty to somehow warn approaching traffic as he was moving very slowly is a closer question. The Missouri CDL Drivers Manual is evidence that a reasonable commercial truck driver would have realized that his slow driving could pose a risk to approaching traffic absent some action, such as turning on emergency flashers, to warn those drivers. Missouri's warning and admonition to commercial drivers to use their emergency flashers when driving slowly is not unique. *See Martini ex re. Dussault v. Washington*, 89 P.3d 250, 253-54 (Wash. Ct. App. 2004) (noting the Washington State Commercial Driver's Guide advises truckers to use emergency flashers when driving very slowly or stopped); *see also* Plaintiffs' Second Motion in Limine at 3, *Graham v. Smith*, Case No. 09-0955-CV-W-FJG (W.D.M.O. Jan. 10, 2006) (noting Oregon's Commercial Motor Vehicle Drivers' Manual requires truck drivers to use emergency flashers if driving slowly).

There is no doubt Mr. Wojcik was driving his truck slowly at the time of the collision. The Court finds that under the circumstances of this case, Mr. Wojcik should have known that failure to warn approaching drivers of his slow speed could create an unreasonable risk of harm to those drivers; thus, Mr. Wojcik was under a duty to so warn those drivers. Mr. Wojcik's insistence that he did, in fact, have his emergency flashers on prior to and at the time of the incident is evidence that Mr. Wojcik is or was aware of such risks. Whether Mr. Wojcik was actually using his emergency flashers prior to or at the time of the collision is a question of fact for the jury. Therefore, the Court cannot grant summary judgment on this issue.

## CONCLUSION

Dr. Schmidt and Mr. Taylor's testimony regarding the trailer's safety bumper is admissible for purposes of this Motion, and Plaintiff has submitted sufficient evidence to establish a material issue of fact relating to the appropriateness of Defendants' safety bumper. Additionally, Plaintiff has submitted sufficient evidence to demonstrate Mr. Wojcik, and, indirectly, Midwest, had a duty to warn approaching traffic that he was traveling at a slow rate of speed prior to and at the time of the accident. A material issue of fact remains for the jury as to whether Mr. Wojcik properly discharged that duty. For the reasons set forth above, Defendants' Motion for Summary Judgment is **DENIED**.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: October 7, 2009

11